IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 12-00072 |
| Plaintiff, | |
| vs. | **REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE** |
| JESSE CASTRO BABAUTA | |
| Defendant. | |

Pending before the court are (i) a Violation Petition filed on December 16, 2021, (ii) a Supplemental Declaration filed on June 1, 2022, and (iii) a Second Supplemental Declaration filed on July 11, 2022. *See* ECF Nos. 109, 117 and 125. Together, these documents allege the Defendant violated his supervised release conditions as follows:

1. Failed to report for drug testing six times (December 1 and 2, 2021, June 17, 29 and 30, 2022, and July 7, 2022);

2. Admitted to using "meth" twice (December 2, 2021, and June 17, 2022) and tested positive for methamphetamine use on five occasions (April 30, 2022, May 12, 2022, and June 7, 9 and 11, 2022);

3. Associated with a person engaged in criminal activity on or about April 29, 2022, and June 17, 2022;

4. Failed to attend three substance abuse treatment sessions (May 27, 2022, June 3, 2022, and July 8, 2022); and

5. Failed to report to the probation office as directed on July 1, 2022.

On January 20, 2022, and August 4, 2022, the Defendant entered admissions to all the violations noted above. *See* Minutes, ECF Nos. 115 and 131. Having heard argument from the parties on September 8, 2022, *see* Minutes, ECF No. 132, the court now issues this Report and

Recommendation as to an appropriate disposition for the supervised release violations.

## BACKGROUND

**A.   Conviction and Sentence**

On April 18, 2013, the Defendant was sentenced to time served (approximately 189 days), followed by 10 years[1] of supervised release for the offense of Failure to Register as a Sex Offender.[2] *See* Judgment, ECF No. 22. Among various conditions of supervised release imposed, the Defendant was ordered to refrain from the unlawful use of controlled substances and submit to urinalysis testing. *Id.* at 3-4.

The Defendant's original term of supervised release commenced on November 13, 2015.

**B.   Post-Conviction Conduct**

On March 10, 2017, with the Defendant's consent, the court modified his supervised release conditions to set the maximum number of mandatory drug tests to eight per month, as a result of the *United States v. Stephens* case. *See* Order, ECF No. 29.

On March 31, 2017, a report was filed informing the court that Defendant admitted to the use of "ice" on March 19, 2017. *See* ECF No. 30. At the Probation Officer's request, the court took no action for violation. *See* Order, ECF No. 31.

On July 24, 2018, the court modified the Defendant's supervised release conditions to impose 25 hours of community service to be completed within 90 days based on the Defendant's failure to report for drug testing and for admitting to the use of "meth" on June 20, 2018. *See* ECF No. 33.

On November 12, 2019, the Defendant's supervised release term was revoked, and he was sentenced to time served (about one day), followed by 56 months of supervised release. *See* Am. J. at 2-3, ECF No. 53. As a special condition of supervision, the Defendant was ordered to serve 16

---

[1]   Pursuant to 18 U.S.C. § 3583(k), the Defendant's offense of conviction required a supervised release term of not less than five years nor more than life.

[2]   According to the Plea Agreement, on January 5, 1995, the Defendant was convicted in the Superior Court of Guam of three counts of First Degree Criminal Sexual Conduct (As First Degree Felonies) in Criminal Case No. CF337-94. *See* Plea Agrmnt. at ¶7(b), ECF No. 7. Defendant admitted that between August 12, 2011, and October 10, 2012, he failed to update his registration as required. *Id.*

weekends of intermittent confinement (Fridays noon to Sundays noon) at the Department of Corrections commencing on November 15, 2019. *Id.* at 5. The bases for the revocation was the Defendant testing positive for methamphetamine, admitting to the use of "meth" on three occasions, twice submitting diluted urine samples for drug testing, and failing to report for drug testing. *Id.* at 1 and Report and Recomm., ECF No. 48.

On November 20, 2020, the Chief Judge revoked the Defendant's supervised release term a second time and sentenced him to three months' imprisonment with credit for time served and 54 months of supervised release. *See* Revoc. J., ECF No. 80. The revocation was imposed as a sanction for the Defendant's failure to report for four drug tests and admission to the use of "meth" on four occasions. *Id.* at 1 and Report & Recomm., ECF No. 77.

The Defendant's current term of supervised release commenced on November 27, 2020.

On January 5, 2021, a report was filed informing the court that the Defendant failed to report for drug testing on December 2 and 7, 2020, and January 1, 2021. *See* ECF No. 83. Because the Defendant was participating in substance abuse treatment at LRC, at the probation officer's request, the court took no action against the Defendant for the violations. *See* Order, ECF No. 84.

On February 17, 2021, the court modified the Defendant's supervised release conditions to include a requirement that the Defendant serve 90 days of home detention with location monitoring after he tested presumptive positive for methamphetamine on February 2, 2021, and admitted to using "meth" on said date. *See* Order, ECF No. 86.

On September 16, 2021, the Defendant's supervised release term was revoked a third time after he tested positive for the use of methamphetamine twice, admitted to the use of methamphetamine three times, failed to report for six drug tests, failed to inform the probation officer of a change in address and failed to attend counseling sessions. *See* Report and Recomm., ECF No. 101. The Defendant was sentenced to four months' imprisonment and 50 months of supervised release. *See* Revoc. J., ECF No. 106.

The Defendant's current term of supervised release commenced on November 3, 2021.

///

///

**CURRENT VIOLATIONS**

**A.    Filing of Violation Petition**

On December 16, 2021, the probation officer filed the instant violation petition, along with a supporting declaration and a violation worksheet (collectively, the "Violation Petition"). *See* ECF No. 109. Therein, the probation officer reported that the Defendant violated his supervised release conditions as follows:

| DATE | ACTION |
|---|---|
| December 1, 2021 | Defendant failed to report for a drug test scheduled at the Lighthouse Recovery Center ("LRC"). <br><br> The following day, the probation officer contacted the Defendant's wife and asked her to inform the Defendant to contact the probation officer and report to LRC for a drug test that day. |
| December 2, 2021 | Defendant failed to report to LRC for the makeup drug test as instructed, and he also failed to contact the probation officer following the incident of noncompliance as required by the substance abuse testing policy and procedure. |
| December 3, 2021 | Defendant met with the probation officer and was told he would be subjected to a drug test. The Defendant readily admitted that he used "meth" the day prior and said he got it from a friend. The Defendant's drug test was presumptive positive for methamphetamine. |

At the request of the Probation Officer, the court issued a summons for the Defendant to appear January 6, 2022, to answer to the allegations. *See* Order, ECF No. 111.

**B.    Initial Appearance Hearing**

On January 6, 2022, the Defendant appeared before th court, and the Federal Public Defender was appointed to represent him, subject to the submission of a financial affidavit. *See* Minutes, ECF No. 113, and Appointment Order, ECF No. 114. Ms. Kottke requested a continuance because she did not have an opportunity to speak with the Defendant about the alleged violations. Without objection, the matter was continued to January 20, 2022. The probation officer noted that this was the Defendant's fourth revocation proceeding, but because the Defendant tested negative four times since the filing of the Violation Petition, the probation officer recommended the Defendant remain on release pending the next hearing. Without objection, the court permitted the Defendant to remain on release.

**C.    Partial Admissions**

On January 20, 2022, the parties appeared before the court, and the Defendant entered admissions to the then pending violations. *See* Minutes, ECF No. 115. The probation officer noted there were no new violations, that the Defendant tested negative on recent drug tests, with no missed drug test, and has been participating in treatment. Without objection, the matter was set for a status hearing in 30 days to monitor the Defendant's compliance, with arguments on disposition to be set thereafter.

On February 24, 2022, the parties again appeared before the court. *see* Minutes, ECF No. 116. The probation officer reported that the Defendant has been compliant and obtained on-call work as a driver for Atkins Kroll. Because he had been compliant, the probation officer and government asked for a modification of his supervised release conditions to include 100 hours of community service, which would be suspended if the Defendant was working more than 20 hours per week, but defense counsel asked for a reduction of the 100 hours. The court stated that the requested modification was a proper reward that the Defendant had earned, and that the leniency recognized the changes he had made but was a reminder that he needed to continue making positive decisions.

**D.    Filing of Supplemental Declaration**

On June 1, 2022, the probation officer filed a Supplemental Declaration, *see* ECF No. 117, alleging the Defendant tested positive for methamphetamine twice and associated with a person engaged in criminal activity, as further discussed below:

| DATE | ACTION |
| --- | --- |
| April 30, 2022 | The Defendant reported to LRC for a drug test. The first and second urine samples indicated the specimens were diluted based on the refractometer scores outside the normal range. The Defendant submitted a third urine sample which was within the normal range, and that specimen was sent for lab analysis. A lab report received on May 10, 2022, indicated the specimen was positive for methamphetamine.<br><br>On May 12, 2022, the Defendant met with his probation officer to discuss the lab report. The Defendant admitted he used "meth" on April 29, 2022, stating that he obtained the drug from an acquaintance. |

| DATE | ACTION |
|---|---|
| May 12, 2022 | Defendant reported to LRC for a drug test, which was presumptive positive for methamphetamine. He denied using any illicit substance, so the sample was sent for lab analysis. A report received on May 27, 2022, indicated a positive result for methamphetamine. |

At the request of the probation officer, the court ordered that a summons issue for the Defendant to appear on July 7, 2022,[3] to answer to the new violations. *See* Order, ECF No. 120.

### E. Filing of Second Supplemental Declaration

On July 11, 2022, the probation officer filed a Second Supplemental Declaration, alleging the following violations:

*Failing to report for drug testing, Admitting to the use of methamphetamine, Testing positive for methamphetamine, Associating with person engaged in criminal activity, and Failing to report to probation office as instructed*

| DATE | ACTION |
|---|---|
| June 7, 2022 | Defendant submitted to drug tests at LRC, with each test resulting in a presumptive positive for methamphetamine use. Each urine specimen was sent for lab analysis, since the Defendant denied using illicit substances. Lab reports received on June 23, 29 and 25, 2022, confirmed the samples were positive for methamphetamine. |
| June 9, 2022 | |
| June 11, 2022 | |
| June 17, 2022 | Defendant failed to appear for a scheduled drug test at LRC. He failed to call or report to the probation officer the following day to discuss his noncompliance and be subjected to a drug test. |
| June 22, 2022 | The Defendant spoke with the probation officer and admitted that he was aware he had missed the drug test on June 17, and further admitted that he had smoked "meth" on that date. The probation officer instructed him to report to the probation office on June 24, 2022.<br><br>The Defendant reported to the probation office as instructed and signed an admission form to having used "meth" on June 17, 2022. he stated that he obtained the drug from a drug-using family member. |
| June 29, 2022 | Defendant failed to report to LRC for a scheduled drug test. He again failed to call or report to the probation officer the following day to discuss his noncompliance and be subjected to a drug test. |
| June 30, 2022 | The probation officer conducted a home visit with the Defendant. The Defendant stated he did not go to his drug test the previous day because he was "getting his family ready" for his custody. He admitted that he used "meth" both "yesterday and today." The probation officer instructed the Defendant to report to the probation office the following day at 2:30 p.m. The Defendant failed to report as instructed. |

---

[3] This date was later continued to July 12, 2022, at the request of defense counsel. *See* ECF Nos. 122-23.

| July 7, 2022 | Defendant failed to appear for a scheduled drug test at LRC. He failed to call or report to the probation officer the following day to discuss his noncompliance and be subjected to a drug test. |
|---|---|

*Failing to attend substance abuse treatment sessions*

On June 23, 2022, the probation officer received information that the Defendant failed to report for three group counseling sessions held on May 27, 2022, June 3 and 10, 2022. According to the Defendant, for the first missed session, he stated that he was working. As for the second missed session, the Defendant claimed he went to GBHWC that day to see if he was eligible for the residential program. Finally, as to the missed session on June 10, 2022, he stated that he attended his daughter's high school graduation. The Defendant's statements differ from those of his counselor at WestCare Pacific Islands. The Defendant's counselor stated that his proffered excuse to her for the first missed session was because he was not feeling well. As for the second missed session on June 3rd, the Defendant did not communicate with her regarding his absence.

On July 8, 2022, the Defendant missed another group counseling treatment session.

At the request of the probation officer, the court ordered that a warrant issue for the Defendant.[4] *See* Order, ECF No. 129.

### F. Arrest, Further Admissions and Detention

On August 2, 2022, the Defendant was arrested. *See* Return of Warrant, ECF No. 130.

On August 4, 2022, the parties appeared before the court, and the Defendant admitted to all the violations set forth in the Supplemental and Second Supplemental Declarations. *See* Minutes, ECF No. 131. Ms. Kottke requested a two-week continuance before presenting arguments on disposition since she wanted to explore other treatment possibilities for the Defendant in Saipan or Hawaii. Defense counsel noted that the Defendant is not eligible for residential treatment at LRC or the DORE program because of a prior conviction, nor is he eligible for treatment at Guam Behavioral Health and Wellness Center because he has no co-occurring condition. Without objection, the matter was continued to September 8, 2022.

---

[4] In light of the issuance of the warrant, the court vacated the hearing set for July 12, 2022.

On September 8, 2022, the parties appeared before the court, and counsel and the probation officer presented their respective arguments as to an appropriate sentence for the violations. *See* Minutes, ECF No. 132. The court ordered that the Defendant continue to be detained pending. Having reviewed the record herein and considered the parties' recommended sanction, the court now issues this Report and Recommendation.

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Revocation is mandatory if a defendant refuses to comply with required drug and tests positive for controlled substances more than three times over the course of one year. *See* 18 U.S.C. § 3583(g)(3) and (4).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

According to the Second Amended Violation Worksheet, the allegations are Grade C violations with a range of imprisonment of 4-10 months based on the Defendant's CHC of II, followed by 40-46 months of supervised release. *See* Second Am. Violation Worksheet at ¶¶ 7-10 and 13, ECF No. 125-1. This is the Defendant's fourth revocation proceeding. For the first revocation in 2019, the Defendant was sentenced to time served (about one day) and 16 weekends of intermittent confinement, for a total of about 33 days. For the second revocation in 2020, the Defendant was sentenced to three months' imprisonment. Finally, for the third revocation in September 2021, the Defendant received a sentence of four months' imprisonment.

The probation officer asked that the court impose a sentence of 10 months' imprisonment, followed by 40 months of supervised release. The probation officer noted that the Defendant received mitigating sentences for the first two revocation proceedings. The probation officer recalled that at the last revocation proceeding, the Defendant stated he learned his lesson not to commit further revocations, and yet less than one month later, the Defendant was again violating his

supervised release conditions. The probation officer stated that the Defendant stopped communicating with the probation office by the time the Supplemental and Second Supplemental Declarations were filed. The probation officer also claimed that the Defendant told his counselor that he was only going through treatment because of his family and his probation officer. The probation officer argued that the Defendant was using this excuse of doing treatment for others, so he never internalized his recovery. Additionally, the probation officer recounted that the Defendant told him that methamphetamine helps him like using Tylenol helps when he has a headache. Based on this history, the probation officer believed that a sentence at the high end of the guidelines range was appropriate.

Counsel for the United States concurred in this recommendation. Ms. San Nicolas stressed that this was the Defendant's fourth revocation proceeding and was only attending treatment to pacify the probation officer and his family.

Defense counsel asked for leniency, particularly since the Defendant has not had the same opportunity as others to participate in residential treatment because of his prior conviction. Ms. Kottke stated that the Defendant was caught up in the never-ending loop of supervised release revocations because of his methamphetamine use. She argued that a lengthy jail sentence will not help him be a successful member of society. She noted that the Defendant had steady employment transporting cars from the port to the dealership, and this was the only employment he could obtain. She further argued that his sex offender designation severely limited his treatment options. She stated that he had been clean for four years until a family member moved in and derailed him from sobriety. She argued that increased sanctions do not always work. Ms. Kottke further stated that she explored the possibility of the Defendant participating in DORE, but the probation office is not supportive of this. She asserted what the Defendant needs is stability and consistency, which he will get if the court imposed strict conditions with location monitoring for however long the court determines and perhaps biweekly court hearings. Ms. Kottke stated that the Defendant has been more honest with his counselor, but he needs more tools and structure to assist with his recovery. She asserted that a location monitoring term will allow the Defendant to get treatment and maintain employment to assist his wife and family. Ms. Kottke noted that the Defendant's conviction was not

a drug dealing offense. She asked the court to give the Defendant the same opportunities as others who are able to get intensive treatment.

The court agrees with defense counsel's assessment that this case has inadvertently turned into a "drug case." The Defendant unfortunately finds himself in a Catch-22 scenario because of his prior conviction and funding restrictions limit the services available to someone in his situation. But ultimately, the Defendant is before the court because of his failures to comply, and while he again is asking for treatment, such treatment will not succeed unless the Defendant acknowledges that he has a problem. His recent statements to his counselor and his probation officer indicate that the Defendant has not accepted that he has a problem. Despite the efforts of his defense counsel and the probation officer, the Defendant's pleas for treatment are meaningless unless he acknowledges that *he* needs help. He must seek treatment for *himself*, not simply to placate his spouse, family and/or probation officer. Nevertheless, this court has repeatedly noted that lengthy incarceration periods that do not include any substance abuse treatment do not work and will not make the Defendant any less of an addict. As noted by defense counsel, the Defendant needs consistent treatment for his addiction, but his access to more intensive programs is limited. The court is willing to hold more frequent hearings, biweekly if necessary, to monitor the Defendant's compliance since he is eligible to participate in DORE. This way, the court can address noncompliant behavior early on and keep the Defendant focused on his recovery.

Having heard the parties' positions, the court recommends a mid-range split sentence of eight months, with three months' incarceration and five months of home detention with location monitoring, followed by 47 months of supervised release. This sentence will allow the Defendant to get back into outpatient treatment within a reasonable period to address his drug addiction. The court believes the recommendation is sufficient to sanction the Defendant and affords adequate deterrence against future violations, particularly because he will be appearing before the court more frequently for monitoring of his compliance with his supervised release conditions.

**RECOMMENDATION BY MAGISTRATE JUDGE**

Having considered the above factors, the undersigned recommends that the Chief Judge (1) accept the Defendant's admissions to the violations described above, (2) revoke the Defendant's

supervised release term, and (3) sentence him to a split sentence of three months' imprisonment, with credit for time served,[5] and five months of home detention with location monitoring, and 47 months of supervised release to follow thereafter.

A disposition hearing shall be held on December 15, 2022, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge. Additionally, the Defendant shall appear before this court for a progress hearing on November 17, 2022, at 10:30 a.m.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Oct 12, 2022

**NOTICE**

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

---

[5] Based on the court's recommended sentence, the court orders the U.S. Marshals Service to release the Defendant on Monday, October 31, 2022, at 8:00 a.m.